IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA


ANDREW M. PEDERZOLLI,                    )
                            Plaintiff,   )        Civil Action No. 13-438
                                         )        Chief Magistrate Judge Maureen P. Kelly
        vs.                              )
                                         )
SONNEBORN, INC.,                         )        Re: 46
                            Defendant.   )


## OPINION

**KELLY, Chief Magistrate Judge**

  Andrew M. Pederzolli ("Plaintiff" or "Pederzolli") was employed by Sonneborn, Inc.

("Defendant" or "Sonneborn") at its petrochemical manufacturing facility in Petrolia,

Pennsylvania.  Plaintiff was terminated on July 9, 2012, when, after a series of disciplinary

actions and counseling, he was observed taking an unauthorized 30-minute break to feed fish at a

stream on Sonneborn property.  Plaintiff  now sues his former employer for discrimination based

upon his age in violation of the Age Discrimination in Employment Act on 1967, 29 U.S.C. §

621 *et seq.* ("ADEA"), and the Pennsylvania Human Relations Act, 43 Pa. Stat. § 951 *et seq.*

("PHRA").

  Pending before the Court is Sonneborn's Motion for Summary Judgment pursuant to

Rule 56 of the Federal Rules of Civil Procedure. (ECF No. 46).  This Court has considered the

briefs filed in support and opposition to the motion (ECF Nos. 49, 53, 61, 63), the parties'

statements and counter-statements of material facts (ECF Nos. 48, 54, 55, 58, 60), and the

extensive exhibits filed by both parties, (ECF Nos. 47, 56, 59).  For the following reasons,

Sonneborn's Motion for Summary Judgment (ECF No. 46) is GRANTED and judgment is entered in Defendant's favor.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

The factual background is derived from the undisputed evidence of record and the disputed evidence, viewed in the light most favorable to the nonmoving party.  See, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) ("The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.").[1]

Plaintiff was hired to work at the Petrolia facility by Witco Corporation, a predecessor to Sonneborn, in 1973, after graduating from high school. Products manufactured at the facility include items used in consumer food grade and pharmaceutical goods, requiring Sonneborn to adhere to manufacturing and production standards imposed by, *inter alia*, the Food & Drug Administration ("FDA").  Over the years, Plaintiff was promoted from a janitorial position to a position as a wax press operator or "caker" in the Wax Packaging Department. Plaintiff held this position from 2002 until his termination on July 9, 2012.

Within the facility, serious forms of discipline are reviewed and approved by Anita Orazco, Sonneborn's Director of Human Resources, and John Holloway, Sonneborn's Vice President of Operations.  Mr. Holloway is solely responsible for approving any termination decisions at the Petrolia facility.

As a wax press operator, Plaintiff's primary duties included loading wax caking machines with hot, liquid wax; unloading the cooled, hardened wax from the caking machines; packaging

---

[1] For purposes of the pending Motion, the undisputed facts set forth in the parties' Concise Statement of Material Facts are incorporated herein and, where disputed, reference is made to the evidence of record, comprised of deposition testimony and relevant documents submitted as by the parties.

wax for shipment to customers; and loading the packaged wax onto trucks for shipment. Completing this process is informally known as "pulling runs."

Plaintiff was responsible for operating four wax caking machines at a time. In addition to operating the wax caking machines, Plaintiff was also required to drive a forklift to retrieve wax caking supplies, periodically check the temperature of the wax, and maintain the wax caking machines. He was also responsible for completing production and maintenance reports for each shift. Sonneborn expected wax press operators to pull a certain tonnage of wax per shift to meet customer orders. Plaintiff pulled approximately four runs of wax per day. Plaintiff acknowledges that it took him approximately five hours and twenty minutes to complete four runs of wax from start to finish. By Plaintiff's estimate, there remained another two hours and forty minutes on his eight-hour shift to complete all other job responsibilities.

Plaintiff was a member of the International Association of Machinists and Aerospace Workers, Local No. 2430 ("the Union"). As such, the terms and conditions of Plaintiff's employment were governed by the collective bargaining agreement ("the CBA") between Sonneborn and the Union. The CBA provides Plaintiff the right to challenge any disciplinary actions against him through a grievance procedure. In addition, the CBA specifies the hours for each shift and expressly permits two ten-minute breaks, which is to include time for a meal. (ECF No. 47-1, p. 53).

Apart from the CBA, Sonneborn adopted policies that all employees were expected to adhere to, including an Equal Employment Opportunity Policy, a Policy Against Harassment, as well as Guidelines for Appropriate Conduct and an Absenteeism Control Policy. In addition, Sonneborn adopted Standard Operating Procedures applicable to various manufacturing processes carried out at the facility. Plaintiff received training in all policies and procedures,

including any modifications adopted over time. For example, these policies specifically confined the use of smokeless tobacco to areas away from the Wax Packaging Department, where Sonneborn's pharmaceutical and food grade products could become contaminated. (ECF No. 47-4, p. 57, ECF No. 47-4, pp. 72, 87). Plaintiff admits that he received training in the Standard Operating Procedures. (ECF No. 48, ¶¶ 22-23; ECF No. 54, ¶¶ 22-23).

### A. Plaintiff's Disciplinary Record

Plaintiff disputes the relevance of his disciplinary record prior to 2007, based upon his unsupported belief that he was not employed by Sonneborn until 2007. However, as indicated by Defendant, and unchallenged by Plaintiff, a change in Sonneborn's corporate ownership occurred in 2005, when Sonneborn was acquired by Sun Capital Partners, and again in 2012, when the company was acquired by One Equity Partners. (ECF No. 47-3, ¶ 7). Plaintiff has presented no evidence that new corporate ownership resulted in changes to applicable work-related policies or procedures, or impacted any decision to discipline employees for infractions of Sonneborn's policies.

Plaintiff's disciplinary records for the years 1995 to 2005 reveal that he received nine written counseling notices for the violation of Sonneborn's absenteeism policy and for actions resulting in a spill of 1200 gallons of product. (ECF No. 47-3, Exhibit H). In 2005, Plaintiff received his tenth disciplinary action for refusing to stamp cartons he had packed. (ECF No. 47-4, Exhibit C). Starting in 2007, Plaintiff was disciplined for violating safety and production policies, as follows:

| Incident Date | Particulars | Discipline | Plaintiff's Explanation |
|---|---|---|---|
| June 1, 2007 | 4 separate violations of operating procedures, including using chewing tobacco and spitting on floors in food grade wax production area; turning down air curtains used to keep insects out of food grade product; twice failing to scrape wax off floors and thereby creating a safety hazard; failing to take wax samples for quality control (ECF No. 47-4) | In person counseling. | He didn't know he was not allowed to chew tobacco prior to June 11, 2007. (ECF No. 54, p.4) |
| June 11, 2007 | Second violation of operating procedures with regard to use and spitting chewing tobacco in food grade and pharmaceutical wax production area. (ECF No. 47-1, p. 92) | Written reprimand acknowledging possibility of termination for future violations. | Plaintiff states that younger employees were not similarly disciplined for chewing tobacco. (ECF No. 54, p. 5). |
| July 24, 2007 | Second violation for turning down air curtains used to keep insects out of food grade product; violations for missing equipment not reported; broken equipment not reported; machinery not maintained in correct working order; falsified records taking credit for "pulls" completed by another employee; second violation of procedure regarding "shorting" the number of cartons per "pull"; threatening language used in discussing schedule. (ECF No. 47-4, p. 262). | In-person counseling session. | Plaintiff admits turning down air curtains because of heat in production area, believes discipline was appropriate. Denies any knowledge of other infractions. (ECF No. 54, p. 5). (Court notes that records of counseling session indicate Plaintiff aware of certain violations and denies knowledge as to others). |

| August 30, 2007 | Third violation of rules regarding use of chewing tobacco in production area; refusal to work overtime based on restrictions in place. (ECF No. 47-4, pp. 267-268) | Written Notice of Counseling & In-person Counseling Session | No response. |
|---|---|---|---|
| September 14, 2007 | Violation of medical restrictions by working excess overtime. (ECF No. 47-1, p. 95; ECF No. 47-4, p. 270). | In-person counseling session and Written Disciplinary Notice. | Plaintiff states he worked as scheduled and that a younger employee was permitted to work in excess of hours allowed per medical restrictions and was not disciplined. (ECF No. 54, p. 5) Sonneborn responds that supervisors not aware of any medical restrictions placed on younger employee cited by Plaintiff. (ECF No. 47-4, p. 270). |
| September 18, 2007 | Fourth violation of rules forbidding use of chewing tobacco in production area. (ECF No. 47-4, p. 273). | Suspended for one day; Written Notice. | No response. |
| January 18, 2008 | Violation of Absenteeism Policy (ECF 47-4, p. 275) | Notice of Counseling | No response. |
| July 25, 2008 | Failure to complete production records for shift on July 2, 2008. Plaintiff and co-worker refused to complete records because "they were making a point" re: prior shift. Records reflect only shift with no information was Plaintiff's shift. (ECF No. 47-4, pp. 277-281). | Notice of Counseling. | No response. |

| August 14, 2008 | Counseled with regard to failure to follow procedures, including failing to stamp product, failure to produce any product over the course of a shift; placing "graffiti" on boxes and failing to act professionally while at work regardless of personal feelings about co-workers. (ECF No. 47-4, pp. 283-284) | In person counseling | No response. |
|---|---|---|---|
| February 11, 2010 | Two violations of safety procedures resulting in minor injuries (December 13, January 15); violation of rules regarding taking breaks in guard station on January 20; insubordination when questioned about taking breaks in guard station. (ECF No. 47-1, p. 96). | Notice of Counseling | Plaintiff claims he went to guard station for aspirin; younger personnel treated differently for same violations. (ECF No. 54, pp. 5-6). Co-worker Dylan Freiters states medical supplies are located in guard shack. (ECF 56-4, p. 4). |
| September 29, 2010 | Second violation of rule forbidding sitting in guardhouse during shift. Sign on guard house door states visits to guard house are for Sonneborn business only; denied that he was in guard house when questioned about situation even when observed by management and guard on duty. (ECF No. 47-1, p. 97). | 3-day Suspension without pay. | Plaintiff denies that he was sitting in guard house during shift; claims he was getting aspirin and cooling off prior to going home. (ECF No. 54, p. 6). |
| December 7, 2010 | Violation of Absenteeism Policy (Late for Work). (ECF No. 47-3, p. 79). | Notice of Counseling | No response. |
| May 3, 2011 | Violation of Absenteeism Policy (Absent from Work). (ECF No. 47-3, p. 78). | Notice of Counseling | No response. |

| | | | |
|---|---|---|---|
| August 23, 2011 | Violation of production procedures; failure to stamp 210 cartons of product produced during shift to identify employee who "pulled" the wax produced. (ECF No. 47-1, p. 98). | Notice of Counseling | Plaintiff admits error, states other employees on same shift not disciplined. (ECF No. 54, p. 6). Sonneborn records reflect that two younger employees on same shift were also disciplined for failing to stamp product in accordance with production rules. (ECF No. 47-3, pp. 90, 106) |
| November 8, 2011 | Violation of Absenteeism Policy (Left Work Early). (ECF No. 47-3, p. 77). Co-workers equally disciplined: Morrow (ECF No. 47-3, pp. 91-97), Horner (ECF No. 47-3, pp. 99101), Bauldoff (ECF No, 47-3, pp. 103-104). | Notice of Counseling | Plaintiff claims younger employees, including Horner, Morrow and Perry, violate policy and are not disciplined. (ECF No. 54, p. 6) . |
| January 9, 2012 | Violation of Absenteeism Policy (ECF No. 47-1, p. 99). | Notice of Counseling | No response. |
| July 9, 2012 | Violation of break procedures. Plaintiff observed feeding fish at creek during an unauthorized 30 minute break. (ECF No. 47-1, p. 100). | Termination | Plaintiff claims break was 27 minutes, including 4 minutes speaking with Mr. Holloway; states rules permit unlimited breaks and there is no written rule forbidding taking break at creek and feeding fish. (ECF No. 54, pp.3-4, 7). |

The incident resulting in Plaintiff's termination occurred on June 19, 2012, when Plaintiff took an unauthorized extended break from his duties to feed fish in a stream running on Sonneborn's property. Sonneborn has provided the Court with a DVD containing two surveillance camera recordings, establishing a time line of events surrounding the challenged break.

| 7:36 p.m. | Camera 4 recording begins. |
|-----------|----------------------------|
| 7:37 p.m. | Three men, including Plaintiff exit a building. |
| 7:46 p.m. | Another employee exits a building. |
| 7:51:48 p.m. | One of the three employees returns from break. |
| 7:55:26 p.m. | Second of three employees returns from break. |
| 8:05:00 p.m. | Two employees enter the building. |
| 8:05:28 p.m. | Camera 2 recording shows Holloway truck approaching bridge over creek |
| 8:07:00 p.m. | Camera 4 shows Holloway truck pull into loading area adjacent to building (1 minute and 32 seconds after approaching bridge) |
| 8:07:33 p.m. | Plaintiff climbs steps to reenter building, but has forgotten his hat. |
| 8:08:05 p.m. | 31 minutes after leaving for break, Plaintiff returns with hat. |

     Plaintiff challenges his termination on two factual bases that he contends provide evidence that the incident is pretext for terminating him because of his age.  First, he argues that his break was merely 23 minutes long; excluding the "four minute" discussion with Mr. Holloway, during which Mr. Holloway expressed his opinion that "this does not look good," and that Plaintiff is his own "worst enemy."  (ECF No. 53, p. 9; ECF No. 54, p. 3).  The DVD submitted to the Court, however, confirms that Plaintiff was away from his work station for over 31 minutes, with Mr. Holloway's discussion lasting less than 93 seconds, including the time it took him to drive onto the bridge and then drive to the loading area.

     Second, Plaintiff contends that being disciplined for his unauthorized break is inconsistent with Sonneborn practice and, therefore, "there was no reason for Mr. Holloway to think that Plaintiff was doing anything wrong." (ECF No. 53, p. 8).  For this proposition, Plaintiff relies upon the deposition testimony of co-employee Holly Jones and Mr. Holloway. With regard to Mr. Holloway, during his deposition, counsel for Plaintiff inquired into whether "you have anything in writing that says when someone is on a break, they can't feed the fish in the creek." (ECF No. 56-3, p. 3). Mr. Holloway testified that taking extended breaks to feed fish is not covered by written company policy.

Ms. Jones testified that employees are permitted two breaks, and on occasion three breaks, depending upon whether work was being completed quickly or slowly or if there was another reason to stop. (ECF No. 56-2, pp. 6-8). Plaintiff cites this testimony for the proposition that there is no established time limit for breaks. However, Ms. Jones testified that when she started her employment at Sonneborn, she was instructed by fellow employees that she was entitled to two 15-minute breaks, and she was expected to eat any meals during her breaks. (Id.). This direction from fellow employees reflects an expansion of the terms of the CBA, which plainly provides for two ten minute breaks; but in any event Ms. Jones' testimony does not reasonably support Plaintiff's contention that he was permitted a 31 minute break to feed fish. (ECF No. 47-1, p. 53).

`        Following the incident, Mr. Holloway e-mailed Dave Collwell (Superintendent of Operations), Ms. Preston (Plaintiff's immediate supervisor), and Ms. Orozco and reported his encounter with Plaintiff at the creek. Mr. Holloway requested that Plaintiff's disciplinary record be reviewed in order to determine how to address the incident.

The following day, Ms. Preston and Mr. Collwell investigated the incident. Mr. Collwell collected video surveillance footage, which confirmed that Plaintiff had left his work area for over 30 minutes. After interviewing Plaintiff, Mr. Collwell and Ms. Preston submitted the video footage, the investigation findings, and a copy of Plaintiff's disciplinary history with notes on past counseling sessions to Mr. Holloway for his review. Upon consideration of these materials, as well as Plaintiff's history of performance problems, including a three-day suspension for a similar incident in 2010, Mr. Holloway and Ms. Orozco agreed that Plaintiff should be terminated.

### B. Age-related Comments

In support of his ADEA claim, Plaintiff points to a conversation with Ms. Orozco a year before the fish incident. The facts giving rise to the initiation of the conversation are disputed (ECF No. 48, n.1), but Sonneborn admits that Ms. Orozco asked Plaintiff what it would take for him to retire. In response, Plaintiff stated he would retire if Sonneborn continued to pay his health insurance until age 65, when he would become Medicare-eligible. Plaintiff concedes that apart from this lone remark, no one at Sonneborn ever made a derogatory or offensive comment related to Plaintiff's age, nor did Plaintiff ever overhear anyone making a derogatory or offensive comment about another employee's age. (ECF No. 48, ¶ 51; ECF No. 54, ¶ 51).

### C. Plaintiff's Replacement & Sonneborn's Hiring Practices

It is undisputed that a month after Plaintiff's termination, and pursuant to the terms of the CBA, Patrick Snow, (DOB 1958), bid into the Wax Packaging Department and became a wax press operator. Mr. Snow, who was just four years younger than Plaintiff, was one of eight employees aged 40 or older hired by Sonneborn to work as a wax press operator since 2007. Four of the employees hired were in their fifities, with the oldest hired at age 55. Two of these older individuals joined Sonneborn less than five months before Plaintiff's termination. In addition, three individuals hired before 2007 are currently over the age of 50 and remain at Sonneborn in the Wax Packaging Department.

Plaintiff points to the fact that after his termination, three probationary employees were hired as wax press operators, all of whom are substantially younger than Plaintiff: Micheal LoPresti (YOB 1988), hired August 2, 2012; Dylan Freiters (YOB 1993), hired April 19, 2013; and Travis Steele (YOB 1990), hired May 31, 2013. As probationary employees, they were paid

less per hour than entry-level laborers.  Mr. Freiters and Mr. Steele who were both hired nearly a year after Plaintiff's termination, have remained in the department with Mr. Snow.

### D.  Plaintiff's Grievance and EEOC Charge

One day after his termination, Plaintiff filed a grievance through the Union.  In his grievance, Plaintiff challenged his termination as "excessive and unjust." (ECF No. 47-1, p. 104).  Plaintiff did not list age discrimination as a factor on the grievance form or in a written letter submitted to his Union summarizing the circumstances surrounding his termination. (ECF No. 47-1, p. 105). While Plaintiff alleges that he complained of age-related discrimination twice in 2007, and again in 2011, when he was disciplined for policy infractions, he never filed a grievance alleging age discrimination as a basis for his discipline or loss of overtime.  (ECF No. 54). Rather, Plaintiff admits that over the years, he never filed a grievance challenging any of the disciplinary actions taken against him by Sonneborn, but did use the grievance process frequently to address assignments for overtime, unrelated to any age-related concerns.  (ECF No. 47-3).  On August 1, 2012, Plaintiff filed an EEOC Charge of Discrimination, alleging that his termination was motivated by his age. (ECF No. 47-1, p.101).

## II.    STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson, 477 U.S. at 247–48 (emphasis in original).

A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. Id. at 248; Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 257; Brenner v. Local 514, United Brotherhood of Carpenters and Joiners of America, 927 F.2d 1283, 1287–88 (3d Cir. 1991).

When determining whether there is a genuine issue of material fact, the court must view the facts and all reasonable inferences in favor of the nonmoving party. Moore v. Tartler, 986 F.2d 682 (3d Cir. 1993); Clement v. Consolidated Rail Corporation, 963 F.2d 599, 600 (3d Cir. 1992). In order to avoid summary judgment, however, parties may not rely on unsubstantiated allegations. Parties seeking to establish that a fact is or is not genuinely disputed must support such an assertion by "citing to particular parts of materials in the record," by showing that an adverse party's factual assertion lacks support from cited materials, or demonstrating that a factual assertion is unsupportable by admissible evidence. Fed. R. Civ. P. 56(c)(1); see Celotex, 477 U.S. at 324 (requiring evidentiary support for factual assertions made in response to summary judgment). The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986). Parties must produce evidence to show the existence of every element essential to its case that they bear the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323; see Harter v. G.A.F. Corp., 967 F.2d 846, 851 (3d Cir. 1992). Failure to properly support or contest an assertion of fact may result in the fact

being considered undisputed for the purpose of the motion, although a court may also give parties an opportunity to properly provide support or opposition. Fed. R. Civ. P. 56(e).

## III.   DISCUSSION

### A.  ADEA Claim

The ADEA provides, in relevant part, that "[i]t shall be unlawful for an employer … to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).  "To succeed on an age-based discrimination claim, a plaintiff must demonstrate that his or her age 'was the "but-for" cause of the employer's adverse decision,' and that it 'actually played a role in [the employer's decisionmaking] process and had a determinative influence on the outcome.'" This showing 'can be made either through the use of direct evidence or circumstantial evidence.'" Henry v. N. Westmoreland Career & Tech, No. 09-751, 2011 WL 1136792 *6 (W.D. Pa. Mar. 25, 2011) (quoting Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 177 (2009) and Glanzman v. Metro. Mgmt. Corp., 391 F.3d 506, 512 (3d Cir. 2004)).

As in this case, where there is no direct evidence of discrimination based on age, and the plaintiff's claims are based on indirect and circumstantial evidence, the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) applies.[2] "The McDonnell Douglas framework requires a plaintiff alleging age discrimination to first establish a *prima facie* case of discrimination. The *prima facie* case … 'eliminates the most common

_____

[2] In his opposition to Defendant's Motion for Summary Judgment, Plaintiff concedes the absence of direct evidence of discrimination, and relies solely upon circumstantial evidence to be weighed in accordance with the McDonnell Douglas burden-shifting analysis. See, ECF No. 53, p. 3.

nondiscriminatory reasons for the plaintiff's [termination].'" <u>Henry</u>, No. 09-751, 2011 WL

1136792 *6, quoting <u>Texas Dep't of Cmty. Affairs v. Burdine</u>, 450 U.S. 248, 254 (1981). "The

*prima facie* case raises an inference of discrimination only because we presume these acts, if

otherwise unexplained, are more likely than not based on the consideration of impermissible

factors." <u>Id.</u> (internal quotation marks omitted).

"'[O]nce the employee establishes a *prima facie* case, the burden of production (i.e., of

going forward) shifts to the employer to articulate a legitimate, nondiscriminatory reason for the

employer's adverse employment decision.'" <u>Smith v. City of Allentown</u>, 589 F.3d 684, 691 (3d

Cir. 2009) (citing <u>McDonnell Douglas</u>, 411 U.S. at 802). The employer's burden is "relatively

light," which can be satisfied "by introducing evidence which, taken as true, would permit the

conclusion that there was a nondiscriminatory reason for the unfavorable employment decision."

<u>Fuentes v. Perskie</u>, 32 F.3d 759, 763 (3d Cir. 1994).

"If the employer makes that showing, the burden of production shifts once again to the

employee to establish that the employer's proffered justification for the adverse action is

pretextual." <u>Fuentes</u>, 32 F.3d at 764.  To survive summary judgment, "the plaintiff must point to

some evidence ... from which a factfinder could reasonably either (1) disbelieve the employer's

articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more

likely than not a motivating or determinative cause of the employer's action." <u>Id.</u> Throughout

this burden-shifting exercise, the burden of persuasion, "including the burden of proving 'but

for' causation or causation in fact, remains on the employee." <u>Id.</u>, citing <u>Tex. Dep't of Cmty.</u>

<u>Affairs v. Burdine</u>, 450 U.S. at 254-55, and <u>Starceski v. Westinghouse Elec. Co.</u>, 54 F.3d 1089,

1095 n. 4 (3d Cir. 1995).

Sonneborn has moved for the entry of summary judgment in its favor first, because Plaintiff cannot set forth a *prima facie* case of discrimination; and, second, because no reasonable factfinder can find pretext.

### 1. Prima Facie Case

To establish a *prima facie* case under the indirect method of proof, Plaintiff must demonstrate: (1) he is age 40 or older; (2) the defendant took an adverse employment action against him; (3) he was qualified for the position in question, and (4) the circumstances surrounding his termination give rise to an inference of age discrimination, either because his replacement was sufficiently younger or because younger, similarly-situated employees received more favorable treatment.[3] See, Burton v. Teleflex Inc., 707 F.3d 417, 425 (3d Cir. 2013); Husick v. Allegheny County, 2010 WL 1903748 at *8 (W.D. Pa. 2010) (citing Roach v. American Radio Systems Corp., 80 F.Supp.2d 530, 532 (W.D. Pa. 1999)).

"There is no talismanic formula for presenting a *prima facie* case." Jones v. School District of Philadelphia, 198 F.3d 403, 411 (3d Cir. 1999) ("the elements of a *prima facie* case depend on the facts of the particular case"). The relevant inquiry is whether the plaintiff has suffered an adverse employment action under circumstances which raise an inference of unlawful discrimination. Waldron v. SL Industries, Inc., 56 F.3d 491, 494 (3d Cir. 1995). Plaintiff's burden at this step is "minimal" and is viewed as a means of presenting a sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical

---

[3] Plaintiff acknowledges that he is *not* attempting to establish the fourth element of a *prima facie* case through evidence that younger employees were treated more favorably and, instead, relies solely upon evidence of hiring substantially younger employees after his termination. (ECF No. 63, p. 4).

question of discrimination. Id.; see also Furnco Construction Corp. v. Waters, 438 U.S. 567, 577 (1978).

Sonneborn concedes the first three elements of a *prima facie* case; i.e., that Plaintiff was older than 40 at the time of his termination and was qualified for his position as a "caker."  The parties differ with regard to the fourth element.  Sonneborn contends that Plaintiff cannot establish that his replacement was sufficiently younger.

Sonneborn points to evidence that at the time of his termination, Plaintiff was 58 years old, and his replacement, Patrick Snow, was 54 years old.  Sonneborn argues that the age of Plaintiff's replacement renders implausible any inference that age played a role in his termination.  In response, Plaintiff argues that Sonneborn had no choice in selecting a replacement, because his former position was subject to a bidding process controlled by the CBA entered into with the Union and, accordingly, Defendant cannot rely on Mr. Snow's age to defeat a prima facie case.  Both parties cite to Evanoski v. United Parcel Service, No. 12-0211, 2013 WL 4666274 (W.D. Pa. August 30, 2013), to support their position.

In Evanoski, the plaintiff was replaced by a much younger man.  UPS argued that because a non-discretionary bargaining process was used to select a replacement, no adverse inference could be taken from the selection of a younger employee.  Plaintiff's counsel in the instant action served as Mr. Evanoski's counsel, and presented evidence that although UPS could not control the bidding process, "it knew which employee was likely next in line to replace Mr. Evanoksi."  Id., 2013 WL 4666274  *7.  The Court concluded that based on this somewhat speculative evidence of institutional knowledge, "'the inference in age discrimination may not be overpowering, but [the Court] cannot say that, as a matter of law, it is insufficient [to state a prima facie claim of age discrimination].'"  Id., quoting Torre v. Casio, Inc., 42 F.3d 825, 831- 32

(3d Cir. 1994). Here, Plaintiff has presented no evidence of "institutional knowledge" regarding his replacement, but argues that since the CBA bidding process controlled the selection of his replacement, Sonneborn could not exercise discretion or free-will, and no inference should be taken from Patrick Snow's age. The Court is inclined to agree. However, even if Mr. Snow's transfer into the Wax Packaging Department is removed from the analysis, there is no evidence of record that age played a role in hiring decisions made contemporaneously with Plaintiff's termination.

The extensive evidence submitted shows that in the months leading up to Plaintiff's termination, Sonneborn hired two individuals in Plaintiff's protected class as Wax Press Operators, Larry Smith, age 52, and Joseph Friel, age 43; and, since 2007, Sonneborn has hired eight individuals over the age of 40 into the Wax Packaging Department. This evidence weakens any inference that Plaintiff's age was more likely that not a motivating factor in Sonneborn's decision to terminate him. See, ECF No. 56-6.

Plaintiff dismisses the effect of any hiring decisions made immediately prior to termination, regardless of proximity in time, as irrelevant, and instead argues that he has adequately stated a prima facie case based upon the ages of three significantly younger individuals hired after Plaintiff's termination. The undisputed record evidence reveals that after Patrick Snow replaced Plaintiff, the next individual hired (Michael LoPresti, hired August 2, 2012) was probationary, and worked in the Wax Packaging Department for just two months. (ECF No. 56-6). The remaining younger employees cited by Plaintiff were hired nearly a year after Plaintiff's termination (Dylan Freiters, hired 4/19/2013; Travis Steele, hired May 31, 2013) and none were hired into Plaintiff's former position. Rather, each was hired as a probationary laborer at a reduced salary. Prior to these hiring individuals, the evidence shows that two wax

press operators either retired (David King) or transferred into another department (Larry Smith). Id. Under these circumstances, the time lapse separating Plaintiff's termination and the hiring of these individuals is too attenuated for a factfinder to reasonably conclude that age played a role in Plaintiff's termination. See, Sarullo v. U.S. Postal Service, 353 F.3d 789, 800 (3d Cir. 2004)(a prima facie claim of age discrimination is not established by merely pointing to the hiring of younger employees); Knox v. Fifth Third Bancorp, No. 12-539, 2014 WL 359818 (W.D. Pa. Feb. 3, 2014)(replacement by an older "interim replacement" for over a year, followed by a significantly younger individual cannot reasonably support an inference of age discrimination); Mason v. Transportation Solutions, No. 08-902, 2010 WL 2698308 * 9 (where defendant hired younger and older workers before and after plaintiff was terminated, and there was no evidence that plaintiff was terminated to make room for younger employees, evidence is insufficient to meet burden on ADEA claim).

In this case, while Plaintiff's "burden at the prima facie stage is not onerous," the Court agrees with Defendant that Plaintiff has not sufficiently established a prima facie case of age discrimination under the ADEA, in particular, the fourth requisite element. Burdine, 450 U.S. at 253. For the sake of completeness, however, if the evidence were sufficient to establish a *prima facie* case, Sonneborn has presented overwhelming evidence that its decision to terminate Plaintiff was based on a legitimate, nondiscriminatory reason arising out of a continuing pattern of discipline for similar infractions.

## 2. Legitimate Non-Discriminatory Reason & Pretext

After a plaintiff establishes a prima facie case, the defendant must articulate a legitimate, nondiscriminatory reason for its action. "The employer need not prove that the tendered reason actually motivated its behavior, as throughout this burden-shifting paradigm the ultimate burden

of proving intentional discrimination always rests with the plaintiff." Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994). The burden of production is light and well-documented misconduct provides a compelling non-discriminatory reason for termination. Id. Mitchell v. City of Pittsburgh, 995 F. Supp. 2d 420, 433 (W.D. Pa. 2014).  Sonneborn alleges that it terminated Plaintiff for "loafing" on company time, and that this incident was not the first for similar misconduct.  Plaintiff admittedly had received a prior written warning and a 3-day suspension for prolonged, unauthorized absences from his work area.   A violation of workplace conduct policy is a legitimate, nondiscriminatory reason for termination. Raytheon Co. v. Hernandez, 540 U.S. 44, 51–52 (2003). Sonneborn has met its burden by "explaining clearly the nondiscriminatory reason ... for its action."  Mitchell, 995 F. Supp.2d at 433, quoting Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 260 (1981).

Because Sonneborn has met its burden of production by showing a legitimate, nondiscriminatory reason for Plaintiff's termination, the burden shifts to Plaintiff to demonstrate that the employer's alleged reasons are pretext for discrimination.  Id. For Plaintiff to meet this burden, he must show "'both that the reason was false, and that discrimination was the real reason.'" Fuentes, 32 F.3d at 763 (quoting St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993)). To survive a motion for summary judgment, Plaintiff must satisfy at least one of the two prongs formulated by the United States Court of Appeals for the Third Circuit in Fuentes:

> [T]he plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.

Id. at 764.

With regard to the first prong, "the non-moving plaintiff must demonstrate ... weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's

proffered legitimate reasons for its actions that a reasonable factfinder could rationally find them 'unworthy of credence.'" <u>Fuentes</u>, 32 F.3d at 765 (quoting <u>Ezold v. Wolf, Block, Schorr & Solis–Cohen</u>, 983 F.2d 509, 531 (3d Cir. 1992)). A plaintiff may not "'simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent.'" <u>Keller v. Orix Credit Alliance, Inc.</u>, 130 F.3d 1101, 1108–09 (3d Cir. 1997) (quoting <u>Fuentes</u>, 32 F.3d at 765). A plaintiff need not necessarily, however, produce additional evidence beyond that required by the prima facie case. <u>Fuentes</u>, 32 F.3d at 764.

Plaintiff contends that there is sufficient evidence from which a reasonable factfinder could disbelieve Sonneborn's reasons for termination and infer that Sonneborn acted for discriminatory reasons. Plaintiff argues first, that Sonneborn is wrong with regard to the length of the break at issue; second, that Sonneborn policy and practices did not forbid an extended break to feed fish at the creek; third, that younger employees were not disciplined for similar infractions; and, lastly, that Sonneborn wanted him to retire.

These claims, however, are unsupported or contradicted by the record, or are based upon speculation. First, the Sonneborn DVD plainly establishes the 31 minute timeline for Plaintiff's unauthorized break. Second, the evidence submitted by Plaintiff does not support his contention that Sonneborn policy and practice permitted extended breaks lasting over fifteen minutes. Third, Plaintiff speculatively points to instances he believes younger personnel were loafing, but fails to support his suspicions with evidence, such as the testimony or personnel records indicating they were absent from their work stations without permission or in the guard house for reasons unrelated to Sonneborn business. Further, Plaintiff marshals no evidence that any other employees repeatedly violated Sonneborn's policies to a similar degree such that Plaintiff's

termination was inconsistent with the discipline meted out to younger personnel.  As in

Evanoski, 2013 WL 4666274 *13, Plaintiff has produced "no evidence of any comparator – a

similarly situated person not in his protected class who, although he engaged in certain instances

of misconduct, was not disciplined and terminated by [Sonneborn] similarly to the maner in

which he was."  Finally, the lone inquiry into what it would take for Plaintiff to retire, made a

year earlier, does not support an inference that Plaintiff's age played any role in his termination.

See, Glanzman v. Metropolitan Management Corp., 391 F.3d 506, 513 (3d Cir. 2004) (inquiring

about retirement plans is "not direct evidence of age discrimination and could just as easily be

explained by a desire on Metropolitan's part to do some long-term planning"); and see, Cellucci

v. RBS Citizens, N.A., 987 F. Supp. 2d 578, 588 (E.D. Pa. 2013) (comments inquiring into

retirement were made almost a year before the contested employment decision, and not part of

the many conversations regarding poor performance and termination do not meet evidentiary

standard to suggest age-based animus).

      Under these circumstances the record does not contain evidence from which an inference

of discriminatory animus against Plaintiff on the basis of age could be drawn under either

Fuentes prong.  Rather, the overwhelming evidence of Plaintiff's repeated violations of policy

and progressive discipline indicates that his termination was wholly unrelated to his age.

Plaintiff adduces no evidence that his discipline was improper or based upon incidents that did

not occur, nor does he point to evidence that any other employee with a similar record was

retained. Simply, there are no "weaknesses, implausibilities, inconsistencies… or contradictions"

in Sonneborn's reasons for termination, such that "a reasonable factfinder could rationally find

them 'unworthy of credence.'"  Fuentes, 32 F.3d at 765 (quoting Ezold v. Wolf, Block, Schorr &

Solis–Cohen, 983 F.2d 509, 531 (3d Cir. 1992)). Because Plaintiff has not met his burden of

showing that his age was the "but for" cause of his termination, nor raised a genuine issue of material facts bearing on whether he was discriminated against because of his age, Sonneborn's Motion for Summary Judgment must be granted.

## IV.    CONCLUSION

For the foregoing reasons, the Sonneborn's Motion for Summary Judgment (ECF No. 46) is granted. An appropriate Order follows.

## ORDER

AND NOW, this 8th day of December 2014, for the reasons set forth in the foregoing Opinion of the Court, it is HEREBY ORDERED that Defendant Sonneborn Inc.'s Motion for Summary Judgment (ECF No. 46) is GRANTED.

IT IS FURTHER ORDERED that, pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure, if the Plaintiff wishes to appeal from this Order he or she must do so within thirty (30) days by filing a notice of appeal as provided in Rule 3, Fed. R. App. P.

/s/ Maureen P. Kelly
CHIEF U. S. MAGISTRATE JUDGE

cc:    All counsel of record by Notice of Electronic Filing